CHRISTENSEN et al., Appellees,

v.

HILLTOP SPORTSMAN CLUB, INC., Appellant.

[Cite as *Christensen v. Hilltop Sportsman Club, Inc.* (1990), 61 Ohio App.3d 807.]

Court of Appeals of Ohio,
Pickaway County.

No. 88 CA 30.

Decided Oct. 30, 1990.

*James K. Hill* and *P. Randall Knece*, prosecuting attorney, for appellees.
*John J. Wolery* and *Mark W. Price*, for appellant.

---

Grey, Judge.

This is an appeal from a judgment of the Pickaway County Common Pleas Court enjoining appellant from engaging in shooting activities on the land

owned by the Hilltop Sportsman Club, Inc. We affirm in part and reverse in part.

Appellant (the "Club"), is the owner of approximately one hundred twenty acres of real estate on which it conducts its activities, including shooting. Appellees are the owners and occupants of property located in the vicinity of the Club. The Pickaway County Prosecutor is also an appellee in this matter.

Appellees filed a complaint seeking a permanent injunction to curtail the shooting activities at the Club. The complaint alleged that the noise created by the shooting constituted both a public and a private nuisance.

After a bench trial, the court found the Club's shooting activities did constitute both a public and a private nuisance. The court issued an injunction permanently enjoining the Club from permitting *any* shooting on its grounds at any time.

The Club appeals and assigns three errors.

"First Assignment of Error

"The trial court lacked jurisdiction to consider and decide the case."

R.C. Chapter 3767 gives the courts of common pleas of Ohio jurisdiction over nuisance cases. R.C. 3767.03 states in part:

"Whenever a nuisance exists, the attorney general, the prosecuting attorney of the county in which such nuisance exists, or any person who is a citizen of such county may bring an action in equity in the name of the state, upon the relation of such attorney general, prosecuting attorney, or person, to abate such nuisance and to perpetually enjoin the person maintaining the same from further maintenance thereof."

R.C. 3767.04 states in part:

"The action, provided in section 3767.03 of the Revised Code, shall be brought in the court of common pleas of the county in which the property is located."

R.C. 3767.01(C) defines "nuisance" as follows:

" 'Nuisance' means that which is defined and declared by statutes to be such and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, contained, or exists, or any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives, films designed to be projected on a screen for exhibition films, or glass slides either in negative or positive form designed for exhibition by projection on a screen, are photographed, manufactured, developed, screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any

such purpose. This chapter shall not affect any newspaper, magazine, or other publication entered as second class matter by the post-office department."

Appellant contends that because noise is not included in the definition of R.C. 3767.01(C), the court was without jurisdiction to hear a nuisance case based on noise. We disagree.

Although R.C. Chapter 3767 provides a statutory basis for nuisance actions, we do not accept appellant's argument that the statute supersedes all common-law nuisance. There is no language within the statute that provides that it was the legislature's intent to supersede common-law nuisance and no court in Ohio has so held.

In *Pizza v. Sunset Fireworks Co.* (1986), 25 Ohio St.3d 1, 25 OBR 1, 494 N.E.2d 1115, the Ohio Supreme Court held that the existence of R.C. 3767.03 did not limit the right of the prosecutor to initiate an injunctive action in the case of a common-law nuisance. In *Gustafson v. Cotco Enterprises, Inc.* (1974), 42 Ohio App.2d 45, 71 O.O.2d 264, 328 N.E.2d 409, the court upheld an injunction issued due to excessive noise from a proposed drag strip.

The trial court had the requisite jurisdiction over the matter below. Appellant's first assignment of error is not well-taken and is overruled.

"Second Assignment of Error

"The trial court should have sustained the motion for a directed verdict at the close of the plaintiff's case because the defendant had not created a nuisance."

At trial, after appellees had rested, appellant moved for a directed verdict claiming that appellees failed to prove that the Club had created a nuisance. The court overruled the Club's motion.

A motion for a directed verdict made in a case tried to the court, rather than to a jury, is deemed to be a motion to dismiss under Civ.R. 41(B). *National City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590. We will, therefore, consider this assignment of error under the standard of review for Civ.R. 41(B)(2).

The issue presented by a motion to dismiss under Civ.R. 41(B)(2) is not whether the plaintiff has presented enough evidence to raise a factual issue for the trier of fact, but whether he has shown a right to relief by the requisite degree of proof. See *Central Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 13 O.O.3d 347, 409 N.E.2d 258.

In deciding nuisance actions a court must weigh the gravity of harm against the utility of a party's conduct. In *Rautsaw v. Clark* (1985), 22 Ohio App.3d 20, 21, 22 OBR 54, 56, 488 N.E.2d 243, 245, the court cited *Antonik v.*

*Chamberlain* (1947), 81 Ohio App. 465, 476, 37 O.O. 305, 310, 78 N.E.2d 752, 759, as follows:

*"The law of private nuisance is a law of degree;* it generally turns on the factual question whether the use to which property is put is a reasonable use under the circumstances, and whether there is an appreciable, substantial, tangible injury resulting in actual, material and physical discomfort." (Emphasis added.)

From the testimony of the experts in this case, it appears that there are two kinds of noise—pure noise and relative noise, much like the legal distinction between an absolute and a qualified nuisance. Both experts testified that at a certain level, around eighty decibels, sound becomes too loud for people to tolerate regardless of the circumstances. In this case, the evidence presented revealed that the sounds from the gun club never reached this level, that the level only occasionally reached seventy decibels, that the nearest residence was over five hundred yards away, and that the sound level at appellees' residences was usually in the forty-to-sixty decibel range.

Relative noise is noise which is too loud relative to its time and location, like talking in a normal voice in a movie theater. Relative noise is just like a qualified nuisance in that it is a question of whether the activity is, again citing *Rautsaw*, " * * * a reasonable use under the circumstances * * *." While the sound of a power lawn mower is always loud, the noise it makes would not be a nuisance at 2:00 p.m. on a Saturday afternoon, but definitely would be twelve hours later, at 2:00 a.m. on a Sunday morning.

In the case here, there was no evidence of excessive noise such as was proven in *Gustafson v. Cotco Enterprises* (1974), 42 Ohio App.2d 45, 71 O.O.2d 264, 328 N.E.2d 409, a drag-strip case where there was testimony of noise levels in excess of one hundred decibels within six hundred feet of the adjoining residential property. Rather, the facts here bear a great deal of similarity to those in *Lykins v. Dayton Motorcycle Club* (1972), 33 Ohio App.2d 269, 62 O.O.2d 382, 294 N.E.2d 227. In *Lykins*, a private club intended to use a rural property for private motorcycle racing approximately nine hundred feet from adjoining properties.

Here, the substance of appellees' case was that they could hear the target shooting and did not like it. Appellees presented no evidence that the sounds they could hear were pure noise, thus, their entire case rested on proving relative noise. The germane issue then becomes: Is target or trap shooting an unreasonable activity *per se* on property in a sparsely populated rural area?

The conduct of the defendant was much like the conduct in the *Lykins* case in that the Club was engaging in a noisy but legal recreational pastime. The

appellees did not present enough evidence to prove absolute nuisance. However, there was ample testimony from which the trial court could reasonably find a qualified nuisance. The shooting was sometimes done quite early, and often went on late into the night, and appears to have taken place at random unpredictable times. Again, the issue of nuisance is one of degree. We find that there was sufficient evidence upon which the trial court could have found a qualified nuisance. The second assignment of error is overruled.

"Third Assignment of Error

"The judgment of the trial court is so overbroad and all-encompassing as to be unconstitutional under Section 19, Article I, of the Ohio Constitution, and the Fifth and Fourteenth Amendments to the Federal Constitution."

When a court seeks to restrict a nuisance through the use of an injunction, it should restrict the activity "no more than is required to eliminate the nuisance." 5 Powell, Real Property (1985) 64–49, Paragraph 704[4]. In the case at bar, by prohibiting any shooting activities to take place on the property in question, the trial court not only eliminated the nuisance, it also restricted the club from engaging in any reasonable use of its property. This is an overly broad injunction.

The relief granted by the trial court was far in excess of what was necessary to protect appellees' reasonable enjoyment of their property. The trial court's order completely bars the Club from using its property for *any* sports shooting at *any* time. The trial court should have considered granting the Club the reasonable use of its property at reasonable times. The relief granted below was excessive and far out of proportion.

Our decision is consistent with an opinion rendered by the Michigan Court of Appeals wherein the court held that with certain court-imposed restrictions as to when shooting activities took place, there was no nuisance in maintaining a shooting club. See *Oak Haven Trailer Court, Inc. v. Western Wayne Cty. Conservation Assn.* (1966), 3 Mich.App. 83, 141 N.W.2d 645.

The third assignment of error is well-taken. The decision of the trial court is reversed and this cause is remanded to the court below with an order to place reasonable restrictions on the shooting activities at the property owned by the Club.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

PETER ABELE, P.J., concurs in judgment only.